## VALETINE BABBITT v. COMMONWEALTH OF KY.

**Criminal Law—Circumstantial Evidence—Measurement of Tracks.**

It was competent for the commonwealth to prove by any means within its power the size of the tracks found in the field, the size of the boots worn by the accused, and any fact which tended to show the correspondence in the size between the tracks and the boots, and it was for the jury to determine the value of such proof when made.

**Criminal Law—Dying Declaration—Written Statement Must be Read to Dying Man—Oral Proof Competent.**

The written statement made out and signed by Gaar and Shardine, was not in any sense the statement of the deceased. It was not in the shape of a deposition, nor was it a statement signed by the deceased, nor is it proven that it was read over to the dying man and adopted by him as his version of the tragedy. Oral proof of a dying declaration is competent.

**Criminal Law—Express Malice—Instruction.**

"Express malice is such as is discovered by external circumstances, such as lying in wait for the deceased, previous threats or former grudges."

There is no proof tending directly to show that the accused had been lying in wait for the deceased or that he entertained toward him feelings of hostility, but it was proved that the deceased had been attacked in the night time, about a week before his assassination, and it was possible for the jury, when considering this fact, in connection with what occurred at the house of Weis, on the night of the killing to conclude that the accused was the assailant, on both occasions.

APPEAL FROM JEFFERSON CIRCUIT COURT.

March 26, 1872.

OPINION BY JUDGE LINDSAY:

This appeal presents but three questions which can be considered by this court.

1st. As to the action of the circuit judge in refusing to exclude from the consideration of the jury the testimony relating to the tracks found in the field in which Jacob Rieu was shot and killed.

2d. In refusing to exclude all testimony relating to the dying declarations of said Rieu, and

3d. In giving instructions asked for by the attorney for the Commonwealth. These questions will be discussed in the order stated.

The tracks were measured with a strip of paper, which was afterwards applied to the boots of the accused by one of the witnesses and by this means it was ascertained that the tracks and the bottom of the boots were of the same size, or rather that the width was precisely the same and that the length of the tracks was a trifle greater than the length of the boots.

In a case like this, involving consequences so momentous to the accused, it would certainly have been much more satisfactory if the rule indicated by Mr. Burrill in his work on Circumcumstantial Evidence had been followed. It is apparent that if the boot of the accused had been taken and new impressions made therewith close to the original track and an exact correspondence been found to exist between the two impressions, such a fact would have tended much more strongly to show that the original tracks were made by the accused, than does the method adopted in this case. But we cannot concur with counsel that an actual comparison is essential in all cases, and that no proof as to the similarity in the size of the track and the shoe or boot of the accused can be heard, unless such comparison has been made. It is true that Bunnell seems to intimate that such is the rule, but we conceive that he intended thereby to convey the idea that such a comparion is essential, not to make competent, but to impart value or weight to the testimony.

It was competent for the commonwealth to prove by any means within its power the size of the tracks found in the field, the size of the boot worn by the accused, and any fact which

tended to show the correspondence in size between the tracks and the boots, and it was for the jury to determine the value of such proof when made.

The failure of the Commonwealth to produce to the jury the proper measure of the tracks made and used by Willis and Webber did not render their statements touching the size of the same, and the statement of Webber as to the result of the application of the paper to the boots of the accussed, incompetent. The production of the paper by corroborating these statements would have given them additional weight, or by failing to corroborate them might have impaired their value, but its production or non-production could not affect the admissibility or relevancy of the testimony.

It is also to be observed that the accused did not ask for the production of the paper, although Webber, who last had it in possession, was in court and examined as a witness.

The court did not err in refusing to exclude the oral proof as to the dying declaration of Rieu.

The written statement made out and signed by Esquires Gaar and Shardine, was not in any sense the statement of the deceased.

It was not in the shape of a deposition, nor was it a statement signed by the deceased, nor is it proved that it was read over to the dying man and adopted by him as his version of the tragedy so far as it appears from the record before us. Rieu did not know what the contents of the paper were. It may be possible that such facts could have been shown to exist, as under the common law rule of evidence, would have made this writing competent, and being competent that it would have been the best testimony as to what the dying declarations of the deceased were.

But from all that can be gathered from the record the paper in question was nothing more than a statement or memorandum made out by the two justices and never read or explained to the deceased.

We are not aware that the rule has ever been extended so far as to admit as competent against a person charged with homicide, a paper purporting to contain the dying declarations of the deceased, until it was first shown that the party making such declarations was acquainted with the contents of the paper, and in some way ratified or adopted them.

Waiving any expression of opinion upon the constitutional question raised by the attorney general as to the admissibility in any case of written statements against parties being tried for criminal offenses, in as much as it does not appear that the paper in question could, under the common law rule, have gone to the jury as evidence, we cannot decide that the circuit judge erred in admitting the oral testimony as to the dying declarations of the murdered man. We are of the opinion that it was sufficintly proved that Rieu believed himself to be *in ex tremis* on Sunday night, when he made statements as to who it was that shot him, to authorize the court to permit proof of these statements to go to the jury.

Weis swears that he said he would never get over the wound, and Elizabeth Wirty, that he said he was going to die right away. The instruction complained of is in these words, "Express malice is such as is discovered by external circumstances, such as lying in wait for the deceased, or previous threats or former grudes." It is insisted that there was no evidence to authorize the giving of this instruction, and hence that it was calculated to mislead the jury.

It is true that there is no proof tending directly to show that the accused had been lying in wait for the deceased or that he entertained towards him feelings of hostility, but it is proved that the deceased had been attacked in the night time, about a week before his assassination, and it was possible for the jury, when considering this fact in connection with the proof of what occurred at the house of Weis on the night of the killing, and of the declarations of Rieu after he was shot to conclude that the accused was the assailant on both occasions, and that his attacks were prompted by ill feelings or hatred, and as we cannot determine that the jury were unauthorized to make the deduction suggested. From the facts proved, we do not feel that we would be warranted in holding that the instruction was wholly abstract.

Perceiving no error in the proceedings had in the court below upon the trial of this prosecution authorizing the interference of this court, we cannot reverse its judgment.

Judgment affirmed.

*Seymour & Abbott, for appellant.*